May I please record John Hillsman appearing on behalf of the appellant, Ms. Willis. Also with your leave, I'd like to reserve two minutes of rebuttal if I still have it by the time we're through. I requested oral argument today primarily to answer any questions that the panel might have about the briefs. Along the way, if there's time, I'd like to make four important points which I think I understand better now than when I wrote the briefs. The first is this one. The merger clause has no application in this case. The merger clause is a very narrow doctrine which holds that when there is an interlocutory appeal from an order granting or denying an injunction, it merges into a final appeal from an order granting or denying a permanent injunction. It works because the issues in both cases, both appeals are exactly the same. That's not the situation here. The lower court did not consider the merits of the case when it issued a preliminary injunction preventing us from litigating in state court. And it subsequently didn't, actually that injunction was issued in a rote fashion under Federal Supplemental Rule F simply to preserve the court's jurisdiction. Similarly, the court didn't issue or grant or deny an injunction when it exonerated the jet ski owner in this case on the merits. It simply denied or dismissed our complaint without leave to amend under Rule 12b-6. Those are two very different issues. And I would therefore say that all of the issues that are raised by both of the appeals in this case are still at issue in this one. So the opposing counsel argues that the denial of the motion to stay the Federal proceedings pending resolution of the interlocutory appeal is now moot because the district court has resolved the Federal proceedings. Well, if we accept the idea that the court's dismissal of the complaint without leave to amend was a good one, then perhaps that would be the case. Okay. So you agree it's moot if the, because the district court resolved the underlying Federal proceedings? Yes, Your Honor. That's what I'm saying. But its resolution was to dismiss the complaint without leave to amend. And if, as I hope I can persuade Your Honor, that that decision was erroneous, then certainly it's not moot. And indeed, conversely, if indeed it's the case that the complaint was amended back to the district court because that decision was erroneous, then we have to consider what to do with the preliminary injunction against State court litigation. It's our view that that also was an error. And I would urge the court to consider both points. The second issue which I wanted to raise is that the Limitation Act, actually in Judge Kaczynski's case, is an acronym that should be interpreted narrowly and applied in a very limited fashion. The Act was passed in 1851, the year Moby-Dick was published. So was Judge Kaczynski in the majority or the dissent? Oh, he was in the majority. This is the Estes Charter's case, Your Honor. Yes. And Judge Kaczynski said that the Act should be interpreted narrowly and applied narrowly because it has very little application. And how would that affect our analysis here? Well, because So the court, so we're dealing with an interlocutory appeal of the denial to lift the anti-suit injunction. It would affect it in a couple of ways. The first way it would affect it is this. Congress passed the Limitation Act as a shield for merchant ship owners, not as a sword. And the Jetski owner in this case has been using the Act as a sword from the moment it filed an exoneration. Could you address the statutory language? Because obviously we're bound by that. Well, the statutory, you're right, Your Honor. The Limitation Act gave the district court exclusive jurisdiction to consider a limitation, but not exclusive jurisdiction to grant an exoneration. The court does not have jurisdiction or indeed What do you mean by exoneration? Exoneration is what happened when What are you saying? When it dismissed the Exactly. So it dismissed it without leave to amend. Correct. That's And it couldn't, because you couldn't raise the, show the duty element of negligent entrustment was the district court. That was an exoneration on the merits. So the district court, I don't know why you're using the term exoneration. He said that you didn't state a claim and couldn't Well, the Act, the full title of the Act is the Limitation Act. So wasn't the district court's ruling on the second amendment complaint just a regular ruling on the second amendment complaint and said it didn't state a claim? Well, and let me answer. I believe that you just asked two questions, Judge. The full title of the Limitation Act is the Limitation and Exoneration Act. The Limitation Act allows the judge to limit liability to the value of the vessel. Alternatively, where the shipowner's limitation rights are not threatened, the court has jurisdiction to exonerate or dismiss the case on the merits. You don't reach that second question, where, as in our case, there are stipulations which guaranteed the right to seek a limitation in admiralty. I didn't see stipulations in the record. I read references that as well as would be willing to stipulate, but I didn't see any actual stipulations. Well, the term stipulation is actually a term of art in these cases. They're not agreements. In order to guarantee or vouchsafe the limitation claimants or the vessel owner's right to limitation, you offer to do certain things. You offer to reserve that claim for the district court. You offer to agree that the value of the limitation fund is only $5,000. You offer to raise judicata. We've done all those things. In addition, we offered to agree that any claim filed in connection with the subject action for indemnity and contribution shall have priority over Willis's claim. The shipowner rarely accepts those offers because they want to keep the... The opposing counsel mentioned in the state action there were other parties who might seek indemnity and also argues that Ninth Circuit doesn't have any cases addressing that. It does not. Is there a method where they're bound as well? Do they agree to be a single claimant? Had they appeared in the limitation action, we would have had to reach stipulations with those other claimants, but they did not. You'll recall that the district court said June 2, 2017 is the deadline for their appearance. They didn't appear. Their defaults were taken at our request. So is there a case saying that if they won in state court, say, the right to indemnity, that that isn't something that could be pursued? Well, first of all, they cannot sue for indemnity. Indemnity applies only where Williams would be vicariously liable. There's no indemnity claim here. They could perhaps sue for contribution. I've asked the court to take judicial notice of the fact under FRA 201 that they have appeared in state court and that none of them are requesting contribution. And are they bound? Are they unable to raise that later? Well, they're unable to do anything at this point because they're in default. If the action were still pending in Sacramento, if the court had abated the limitation action as we asked it to, they could go back there and ask to have the default removed. What's the default in state court? There was no default in state court, Your Honor. They appeared in state court. I'm not understanding. They appeared in state court. Yes. They defaulted. They have not yet raised a contribution action. And I guess the question is, are they precluded from doing so? And you said they are because? Yes, they are because they have defaulted in the district court. Remember, there are two actions. Okay. So is there a case that says that? Well, yes. Even the Otico case says that. Except if this gets reversed. Well. Then can they raise a contribution claim in state court? Well, they would have to go back and request the default to be remitted. In other words, the basis of what you're saying, that they can't see a contribution, is the fact that there is a Federal judgment. If you prevail and the judgment is reversed and, as you wish, the stay is lifted in the state court proceedings, then what precludes them from raising a contribution? Well, we're already. What prevents them from raising a contribution claim at that point? I understand. But we are already suing them in state court. There was never an injunction against suing the other claimants. If this case is reversed and it goes back and the district court abates the action as we asked it to, all right, they can then, if a cross-claim is raised in the state court action, they would have to, before they could raise a cross-claim in the state court action, they would have to go back to Sacramento and the district court and ask for relief from default. What we are simply asking for at this stage is to keep that option open. What happened in the district court was that even though this was a single-claim case in the district court, even though we were the only claimant before the district court, the district court refused either to lift the stay against suing Williams or to abate proceedings in the admiralty. And it is very clear under Newton, under Ross, and under a variety of decisions that where there is only a single claim, the district court has no jurisdiction, no discretion to do anything but lift the stay and abate the admiralty action. Abate doesn't mean dismiss the admiralty action. You keep the admiralty action open in order to field problems just like the one you raised, Judge Thomas, and just like the one you raised, Judge Okuda. But what happened instead was that the district court basically ignored single-claim exception. And remember, there were no arguments about the cross-claimants and their possible claims before the district court. This is something that has just come up before at this stage. But the district judge declined, denied our motion, ignored the fact that it was a single-claim case, gave lip service to the fact that he was perhaps denying us a jury, and then refused to lift the stay. And then after that, after we filed an interlocutory appeal, basically proceeded ahead, altered the status quo while this court was still considering our interlocutory appeal and ruled as a matter of law that our action should be dismissed for our alleged inability to state a duty. That changed the status quo completely. All we are asking is that the 12b-6 order be reversed, that the case be remanded to the district court with instructions to lift the stay against suing the jet ski owner in state court, and abate proceedings in admiralty until there are further developments. As a practical matter, I don't think that the other claimants will ever seek to have that default lifted. There's no reason to do so. This is a $5,000 sum that we're quibbling over. This is not the nail for one of which the battle should be lost. But the situation we have here is that the district court ignored the plaintiff's rights, or my client's rights, under the Savings to Suitors Clause. And the thing you have to remember is that the tension between the Savings to Suitors Clause is the thing which animates this whole problem. On the one hand, the ship owner has a limitation right, which everybody agrees is an anachronism, which everybody agrees provides ship owner with a species of protection that isn't available to any other member of our society. On the other hand, we're talking about maritime tort victims' jury rights, constitutional jury rights under the Seventh Amendment. So it's well settled under the cases that it's actually a sliding scale that applies here. The more secure the ship owner's limitation rights become, the less need there is for exclusive jurisdiction. Well, we have secured the ship owner's limitation rights in every way we can. We are the only claim. The other claims are in default. We have offered stipulations which protect the ship owner in every conceivable way. We have even offered to put our tort claims in – give them less priority than the ship owner's cost claims. And under those circumstances, the Lagnus rule leaves absolutely no room for discretion. The court has to lift the stay, obey the proceedings in amnesty, and allow the plaintiff to go forward and stay in court. I want to ask, if you'd clarify a question that Judge Acuda asked. Sure. She asked you where in the record are these stipulations, and I did not understand your answer. I think the court will find them in Volume 2 of the excerpts at pages 119 through 120. The final point, and I see that I'm losing time very quickly, is this. Yes. The 12B6 ruling was simply and flatly incorrect. This case arises under the general duty to use one's property in a way which doesn't injure others. The district court felt that that duty didn't apply unless we could show that the other, the person who was injured, was somehow either known to or in a contract with the rental company. That's not the requirement. If I give my 13-year-old son a car and he injures somebody else, it doesn't have to be proven that I know him or that he was in a contract with me. And the question here is twofold. One, did our claim perhaps State account for diligent entrustment? And then alternatively, if it didn't, is it clear from the record on de novo review that whatever problems there were with that complaint, they could not be cured with the right to amend? And with that, Your Honor, I'll reserve whatever time I have left. Thank you. Thank you, Counsel. Your Honors, may it please the Court, my name is Otis Felder and I'm here on behalf of the appellee, William Sport Reynolds. Nobody wants to be here in this kind of case. This is a tragedy. We're sorrowful that this happened to Mr. Williams. But William Sports Reynolds did not engage, did not, was not the one that chose to engage in this particular sporting activity. Mr. Williams did, knowing that he wasn't able to swim. He got on the back of a jet ski, which is commonly known, as the Courts of Appeal of California have stated, is something that has inherent risk. This Court itself has recognized that a jet ski, getting on a jet ski, hitting a wake or a wave, you're going to fall off. And that's just the inherent nature of the recreational sport. This is a question the District Court addressed with respect to recognize whether there's a duty or not by William Sports Reynolds. It's been conceded there wasn't a contractual relationship with Mr. Williams. But in analyzing whether there's a duty or not, just the mere foreseeability is not the test. And I draw the Court's attention to the Amarok sports case at 831 F. 3rd, 1264, 2016, which was cited in the briefs. In that case, the Court went thoroughly and examined, the Tenth Circuit examined, the issue about duty. And in that case, it said, foreseeability does not equate to duty. You can't measure a duty just because something is foreseeable. And in these duty, no duty kinds of cases such as this, the Court's asking as a policy matter whether we're going to hold somebody liable because of the relationship, the nature of the sport, the nature of the activity. That's done regularly by courts. It's a legal question. It's a question of law, pure and simple for the Court to address. And as Trombley and Ashcroft courts both say, those decisions by the Supreme Court, the whether something is plausible as a cause of action. Negligent entrustment, the example that counsel just gave and what he gave to the district court is entrusting a motor vessel or a vehicle to a 15-year-old. That is apparent to somebody who does that, that the person is not qualified. In the state of California, most likely wouldn't have a license. There's no requirement for renting or using a jet ski that a person be of a certain age. And here we're talking about grown adult men who decided to rent a jet ski. There was nothing apparent about them that suggested that they shouldn't be able to use it. They had said that that's in the record at the supplemental excerpts of record at pages 40 and 47. They had said that they had rode jet skis before. It's not a case where they said they're totally inexperienced. And counsel makes this reference occasionally in the briefs that these were novice jet ski users. That's just not the case. And there's no reason that Williams Sports Rental would have known at the time of day on that August 13th that it was renting to somebody that would use the jet ski in an inappropriate way. Could I direct you back before we finish with this issue? As to whether the district court erred in denying the motion to lift the stay of the state court proceeding. The opposing counsel said they did everything right that would ensure that the district court was required to lift the stay. It was a single claim, single claimant situation. They provided the applicable stipulations. Why is that not correct? Well, it's not correct, Your Honor, because first you have to state a claim. As we've said repeatedly, you can't get to the next stage of asking for something to be lifted if you haven't stated a claim under either through the lens of Federal Rule 8 as examined by 12B or under Supplemental Rule F3 as examined through Supplemental F Rule 8. So you first have to be able to state a claim. Now, if they had stated a claim with respect to seeking a lift of the injunction, the court has discretion as to whether or not to do that. There is no case yet, this is the first one, this is a novice case if we get to that issue, is whether or not someone with a federal wrongful death claim, which was not recognized by general maritime law until 1970 in Moraine. Counsel concedes that that never had existed under common law. There was never a wrongful death claim under common law. So in order to lift the stay, to have this tension between State Court Seventh Amendment right and Federal Court Admiralty case, you have to have had a common law remedy for wrongful death. It just doesn't exist. This is a new remedy that was created in recognizing how states were reacting to wrongful death. And it's historical. I can explain it if Your Honor likes me to. But you can't ask for a lift of the stay if you don't have a common law remedy in State Court. Now, counsel has referred to a Simmons case, it's a State Court case in California, that says, oh, well, wrongful death is already recognized. Simmons did not go through that analysis of whether or not there was a common law remedy. And we've done this, this court has done it, the U.S. Supreme Court has done it, repeatedly. There's been a big question, as Your Honor knows, with respect to whether or not punitive damages exist under unseaworthiness. And the examination for that in the Supreme Court has been to look at whether or not common law provided a remedy for punitive damages. And the court, Judge Thomas, found that it did. And so, therefore, punitive damages could be a remedy that could be sought now. And I only go into that as an analysis because it's important here. When courts don't do that analysis, they just say, oh, well, there's a common law remedy because of the Savings-to-Suitors Clause. And the Savings-to-Suitors Clause only gives that right or remedy if it existed in common law. The other two examples that have been given is that, you know, well, under the Jones Act and the Death on the High Seas Act, both of those would be examples. And you look in the cases such as Shipman, Newton, it's a Jones Act case. Mr. Shipman wanted to pursue her common law remedy in federal court in that case. But it was a Jones Act case. Well, the Jones Act and the Death on the High Seas Act both have written in their statutes, the Jones Act incorporates FELA, which has a specific statute that gives state courts concurrent jurisdiction. It doesn't simply rely on 1333. It has its own specific statutory grant. Congress was concerned that 1333 would not give a Jones Act seaman a right to pursue a claim in state court. So it said, okay, we're going to specifically give that right. Same with the Death on the High Seas Act. Congress wanted Death on the High Seas Act cases to be specifically heard both by federal and state courts, particularly because states had already for a long time created a statutory right for wrongful death. And if it happens in state territorial waters, there's a remedy for that that's created by state law. So Congress was just doing that statutorily and made the jurisdiction concurrent. That's discussed in the Garofalo case. It's a state court case that's cited in our brief, that distinction. So without having a common law remedy, you can't ‑‑ there's no tension between to create a lifting of the state. And that's what the argument that the appellants rely on is that we should have had a lift of the state to go pursue this purely Admiralty case. It's purely ‑‑ and they say, well, the distinction is because they're pursuing it in personam. That's not the distinction. The distinction is historical based on whether or not they had a common law remedy. So without that, the second problem that's raised is that the judge, as you read in his reasoning, is that he never ‑‑ and in the arguments made by counsel, he never denied the appellants the ability to ask for a jury. He said that issue had not fully been resolved. He designed it without prejudice. He said he would consider whether or not they could bring a jury claim separate from their claim in this case. Now, remember, in these proceedings, the vessel owner is the plaintiff. So they file an answer, which they did, and then they also filed a counterclaim. And on their counterclaim, rather than us answering the counterclaim, we filed a 12B‑F8 motion saying we don't believe this is a valid claim. So the court could have seen ‑‑ the claimants could also have filed a state wrongful death claim under 1367. The court could have exercised supplemental jurisdiction. They could have filed a state court claim. That would give them, arguably, a separate cause of action in which they would have a right to a jury trial. But the court never reached that point. It said, well, I'll consider that later and not consider it at this point because he was still deciding whether or not the claimants had actually stated claims for both wrongful death and a survival action. And then the third point is, and everyone talks about the Langus motion. We're talking about this case called Langus in which it was a fisherman that was injured on the vessel Aloha up in Washington. Now, he had brought a claim, a lawsuit, in Washington Superior Court. The owners of the vessel filed the limitation action in federal court that stayed the state court action. And the case went all the way up to the Supreme Court on this issue, whether or not the federal judge ‑‑ actually, in that case, the federal judge tried the case and found no liability. So they brought it to this court. Then it went to the U.S. Supreme Court. The U.S. Supreme Court said, not so fast. He should have ‑‑ the judge should have stayed that case and let the seaman, because he's a Jones Act seaman, has a federal ‑‑ has a common law right to have a jury trial, should have let him proceed in state court. So it goes all the way back down, just like ‑‑ and he's allowed to proceed in state court. Except everybody forgets what happens next, which is the Ex Parte Green case. It's the same case. So in the Green case, the seaman tries to bring in his state court action a claim for unseaworthiness and challenged the limitation in the state court action. That, I don't know, maybe the court was not as busy in 1932, but that goes all the way back up to the Supreme Court. And the Supreme Court at that time said, no, you can't do that. You can only bring common law claims in the state court. You can't challenge actions that happen or that would adversely affect the limitation proceeding. And that's exactly what the claimants plan to do here. If they're allowed to proceed in state court, they're going to challenge the issue about whether or not, in our case, Williams Sports Rental, it's a necessary part of their claim, knew or should have known about whether or not there was a point how Williams was going to get on the jet ski and be a rider and fall off. They have to bring at issue the owner's knowledge. That is necessarily combined in a limitation action, because it's the second part. So after, as counsel has said, after the claimant shows that there's liability, the next question for the district court is, can the owner prove that it was outside the privity or knowledge of the vessel owner that this incident occurred? So when he brings, when he, when the claimants have an action in state court necessarily bringing at issue this idea about the owner's knowledge, it's certainly going to affect the limitation proceeding for which it ex parte grew. So what the screen says, you cannot do. There's no, you know, the stipulation that was offered, and this was something the court has asked about, there actually is not a stipulation in the record. As you see, when the vessel owner stipulated to the value of the vessel, and it is a term of art in maritime, they actually proffer a written stipulation. So there is a record of what it is. So we, as the owner, stipulated, it and we submit that stipulation, and the court either approves it or doesn't approve it. There's no written stipulation in this case. There's not anything proffered by the claimants other than this proposal that they will stipulate and try to bind the non, other parties, the non-claimant, the non-parties who are in the state court action. There's no way, as Your Honor has asked, that they can bind those parties. Now, they could have offered a stipulation and got those other parties' consent. They could have, they know who they are, they know who their lawyers are, and they could say, look, we want to bring this whole case into state court. Will you stipulate with us, offer to the federal court, that you will not bring claims for indemnity, contribution, or any way hold Williamsport Rental liable in excess of the limitation fund? They didn't do that. They could have, but they didn't. So there's no... And what we're talking about today is the resolution of the counterclaim. True? Right. The judgment in this case simply says, on the basis of the counterclaim, this case is dismissed. What did you do with your claim? We're exonerated, because there are no... That's not in the judgment. That's right. There's just no... The court acted without us making a motion or any... It just says, judgment entered on the basis of the dismissal of the counterclaim. He never reached the merits of your claim, did he? I mean, maybe by implication, but it doesn't say that. That's correct, Your Honor. We did not make a motion. Here's the second question. If, hypothetically, we think he was incorrect in denying or imposing the stay, refusing to lift the stay under the single claimant rule, or for whatever reason, what consequence does that have here? Well, it does what Your Honor had asked earlier. It opens up the claim... It's conceivable that the other claimants would then file claims, and it would no longer be a single claim case. So we're back where we started. Except that there was a deadline set in this case, correct, for the other claimants? There was. And that passed, and nobody claimed. Except that's not technically true. The claimants had actually filed their claim, and then they filed an amended claim after the deadline. Now, they argued that it related back. Okay, that makes sense under... So, if, hypothetically, we concluded that the district court erred in declining to lift the stay, what consequence does that have on this appeal? If you lift the stay... If the court should have granted the stay... Lifted the stay. Lifted the stay, then the plaintiff, the estate, would be able to file or proceed against Williamsport rental in state court. Even though the court has already found, as a matter of law, they didn't have a duty. Right. Well, if you'd done it in the reverse order, I get your argument. But by saying, by refusing to lift the stay, doesn't that still bring that issue alive before us? No, because he reached the merits of whether or not they had a claim or not. He can't lift... So if he had lifted the stay, and he said this in the proceedings, if you read the proceedings, he said, even if I lift the stay, there's nothing... That's the second issue. There's nothing that prevents me from holding a hearing on this case. In order for that to happen, you also have to have what he called a fancy word, abatement. You have to have an abatement. You have to also stop the Federal action from proceeding. So you have to have two errors of discretion. First, lifting the stay, and then not abating the Federal court action. My question is taking over time. Thank you. Thank you, Your Honor. Chief, it sounds as if you've been very patient. May I ask for a very short opportunity to answer your question? If this Court sends the case back, and concludes that the District Judge erred when it refused to lift the stay, it would also instruct the District Court to stay proceedings in amnesty, pending what happens in the State Court. That would give us the power to try to file our claim against the jet ski owner in State Court, along with the rest of them. The error that my colleague is asking this Court to uphold is this. The savings to suitors clause enabled us to do two things. The first was it enabled us to pick the forum in which the merits of our case was to be decided. Counsel argues that I cannot exercise that power, that right, unless I have a valid claim. The question is who determines whether that claim is valid. The District Court should not have done so. The cases are absolutely clear that when there is a single claim, the District Court must lift the stay, abate proceedings in amnesty, and let the State Court determine whether there is a valid claim. The fact that the claim is not subject to the savings to suitors clause is simply and flatly and demonstrably false. If the Court will take a look at the Morang decision, footnote 14, it will see that the Court specifically dealt with that issue. The Morang case was filed in State Court. It was removed at law, to the law side of Federal Court. Morang actions have always been subject to the savings to suitors clause. The last argument that counsel made and that I want to respond to very briefly is that we, is that the Court should uphold the 12B6 ruling. Well, the 12B6 ruling depends on the notion that there is no duty to anybody who is not party to the contract or known to the defendant. That's simply wrong. The tort of negligent entrustment says that a party who entrusts a channel to another cannot assume that that party will conduct himself negligently. And that where it has, it knows or has reason to know that the party to whom he's entrusting the channel lacks the skills or lacks the training to conduct, to operate that channel safely, that's negligent entrustment. So, can I ask one question? Yes, sir. If you're correct and the District Court is reversed and you are allowed to proceed in the State Court, does the limitation of liability still apply? The limitation of liability is reserved to the District Court. You could argue that the limitation doesn't apply if you get back in State Court. That, under the ruling that I hope this Court issues and under the stipulations that we've offered, and they are definitely in the record at the place where I pointed out, the District Court retains exclusive jurisdiction over the limitation action. If the State Court dismisses the action. Federal District Court. Yes, the Federal District Court. If the State Court dismisses the action or if a jury concludes that there was no negligent entrustment, the limitation action is moot. You understand that a limitation action only applies. Right, because what happens if you get a million dollars? Then I have to go back to the District Court pursuant to my stipulations. I cannot claim res judicata, I cannot claim collateral estoppel, and we have to try the limitation action. And the only issue before the Court then is whether the negligence of the jet ski renter fell within the privity or knowledge of the company. The Court used to hang a silver oar when it heard these things because they're a lost art. These remedies are seldom invoked and people have forgotten how they're to be conducted properly. If we go back to District Court, no matter what happens in State Court, the District Court retains exclusive jurisdiction over the limitation action. And if I'm granted a verdict, a million dollar verdict in State Court, the District Court still has exclusive jurisdiction to decide whether that verdict should be limited to $5,000 under the Act. That's how it works.
judges: Thomas, Ikuta, Molloy